UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Leslie E. Posner                               Case No. 09-66165
                                               Chapter 7
                    Debtor.                    Hon. Marci B. McIvor
_____/

Norma Gorosh,

            Plaintiff,

v.                                             Adv. Pro. No. 09-7043

Leslie E. Posner

            Defendant
_____/

## OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING COUNT II OF PLAINTIFF'S COMPLAINT

This matter is before the Court on Plaintiff Norma Gorosh's Motion for Summary Judgment. Plaintiff seeks judgment on Count II of a two-count Adversary Complaint. Count II of Plaintiff's Complaint seeks to hold a $112,322.22 debt owed by Defendant/Debtor to Plaintiff nondischargeable pursuant to 11 U.S.C. § 523(a)(8).[1] For the reasons set forth below, Plaintiff's Motion is denied. Summary Judgment is granted for Defendant as to Count II of the Complaint and Count II is dismissed.

### I. Background

Between May, 1999 and September, 2002, Plaintiff Norma Gorosh co-signed several loans with Defendant/Debtor Leslie Posner. Plaintiff was a friend of Defendant's

---

[1]The Complaint also seeks to have the debt held nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), but that count (Count I) is not at issue in the present Motion.

mother. The loans were student loans which Defendant used to pay for law school and to obtain a masters degree in taxation. Defendant defaulted on the obligations, and the lenders sought payment from Plaintiff. Plaintiff paid the lenders, and then sought repayment from Defendant. Defendant failed or was unable to pay.

On April 5, 2007, Plaintiff filed a state court law suit against Defendant seeking repayment. A consent judgment in the amount of $112,322.22 was entered in Plaintiff's favor on November 23, 2007.

Defendant filed a voluntary Chapter 7 bankruptcy petition on August 24, 2009. Schedule F (unsecured nonpriority claims) lists the balances owed to Plaintiff on the loans in the amount of $170,799.00. On November 25, 2009, Plaintiff filed the present Adversary Complaint seeking to have the state court judgment held nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) (Count I) and (a)(8)(Count II). The present Motion seeks summary judgment only as to Count II.

## II. Jurisdiction

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11. *See* 28 U.S.C. §§ 1334 and 157. Core proceedings include proceedings to determine dischargeability. 28 U.S.C. § 157(b)(2)(I).

## III. Standard for Summary Judgment

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. A "genuine" issue is one where no reasonable fact finder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). Once the movant meets this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted." *Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149-50 (6th Cir. 1995) (internal quotation marks and citation omitted).

The Court may enter summary judgment in the absence of a cross-motion, if otherwise appropriate. *Century Offshore Mgmt. Corp. v. BMO Financial Incorporated*, 119 F.3d 409, 412 (6th Cir. 1997); *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Ledford v. Tiedge (In re Sams)*, 106 B.R. 485 (Bankr. S.D. Ohio 1989); *Dickeson v. Quarberg*, 844 F.2d 1435, 1444 n.8 (10th Cir. 1988).

### IV. Analysis

11 U.S.C. § 523(a)(8) excepts from discharge any debt,

> unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8) balances two competing policy objectives. The Bankruptcy Code was drafted to provide a discharge procedure that enables insolvent debtor's to reorder their affairs and start a new life without the pressure and discouragement of pre-existing debt. *See Grogan v. Gardner,* 498 U.S. 279, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991). However, Congress has also elected to exclude certain obligations from the general policy of discharge where the public policy at issue outweighs debtor's need for a fresh start. *See In re Pelkowski,* 990 F.2d 737 (3d Cir. 1993). 11 U.S.C. §523(a)(8) restricts the ability of students to discharge educational loans to protect the financial integrity of educational loan programs and to induce lenders to lend to borrowers who could not qualify for loans under traditional underwriting standards. *In re Pelkowski,* 990 F.2d at 743.

The policy considerations underlying 11 U.S.C. § 523(a)(8) necessarily limit the parties who may take advantage of the statute's protections. A debtor may avail himself of § 523(a)(8) and obtain a discharge of his student loan debt <u>only</u> if he can show that repayment of the debt will impose an undue hardship on him and his dependents. A

4

lender is only protected from the discharge of an unsecured loan made to a debtor, if the loan qualifies as an educational benefit, or is a loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution.

The issue before this Court is whether the Plaintiff, qualifies as a party whose claim against Defendant is protected from discharge under 11 U.S.C. § 523(a)(8). Plaintiff asserts that the debt owed to her is in the nature of an educational loan. The Bankruptcy Code does not define "educational loan". As explained in *Tift County Hospital v. Nies (In re Nies) 334 B.R. 495 (Bankr. D.Mass 2005)*:

> A majority of courts have adopted a test that determines the educational nature of the loan by focusing on the substance of the transaction which resulted in the obligation. The "substance of the transaction test" reflects recognition of the Congressional purpose of §523(a)(8), namely to insure the availability of educational financing. This goal is achieved by "principally protect[ing] government entities and non-profits- *places which lend money or guarantee loans to individuals for educational purposes from bankruptcy discharge.*"

*In re Nies*, 334 B.R. at 501 (citations omitted, emphasis in original).

Defendant obtained student loans for the period 1999 to 2002. Plaintiff co-signed the loan notes. Plaintiff is a co-borrower, not a lender. Plaintiff is not a governmental unit or a non-profit institution. Thus, the only question before this Court is whether Plaintiff may somehow shoe-horn her status as a co-borrower into some other status which would protect Plaintiff's claim against Defendant from discharge. Case law clearly holds that Plaintiff is not a party whose claim is protected from discharge under 11 U.S.C. § 523(a)(8).

The case most directly on point with the facts of the instant case is *Resurrection*

5

*Medical Center v. Lakemaker, (In re Lakemaker),* 241 B.R. 577 (Bankr. N.D. Ill. 1999). In *Lakemaker,* Lakemaker, the debtor, obtained student loans in order to attend medical school. After finishing his education, he began working for Resurrection Medical Center. As part of his employment agreement, Resurrection agreed to pay off the debtor's student loans. Subsequent to making the payments the parties had a falling out and Resurrection sought reimbursement from Lakemaker on the loan payments. Resurrection ultimately obtained a judgment against Lakemaker for more that $150,000.00, Lakemaker subsequently filed a bankruptcy petition. Resurrection brought an adversary proceeding against debtor Lakemaker claiming that Resurrection, under the doctrine of equitable subrogation should be entitled to stand in the shoes of the lenders whose notes it had paid, and that the debt was non-dischargeable under 11 U.S.C. § 523(a)(8). The bankruptcy court rejected the argument, stating that Resurrection was "not an educational lender" nor did it "obtain an assignment of rights" or "represent to either Lakemaker or to the original lenders that it was purchasing the loan." The Lakemaker Court further noted that §523(a)(8) was designed by Congress to protect government entities and non-profit institutions making educational loans, and its protections did not extend to money paid on those loans by third parties. *Lakemaker,* 241 B.R at 582.

Similarly in *Santa Fe Medical Services, Inc. v. Segal (In re Segal),* 57 F.3d 342 (3rd Cir. 1995), a third party Santa Fe Medical Services, paid off a portion of Elizabeth Crowe's student loan debt. Crowe and her husband Stanton Segal went to work for Sante Fe Medical Services and signed a promissory note obligating them to repay Santa Fe Medical for the amount Santa Fe had paid on her student loan debt.

Subsequently, Crowe and Segal filed for bankruptcy. Santa Fe Medical filed an adversary complaint seeking to have the amount it had paid on Crowe's student loans held to be non-dischargeable. The Third Circuit Court of Appeals affirmed the Bankruptcy Court in dismissing Santa Fe Medical's complaint. The Court stated:

> Furthermore, we do not find the loan "similar in nature to [a] student loan." Although, the loan was made by a nonprofit institution, was unsecured and was used to repay an obligation incurred in return for an educational benefit, nothing in the express language or the legislative history of section 523(a)(8) convinces us that Congress intended for loans such as the one at issue here to be non-dischargeable in a chapter 7 bankruptcy.

*In re Segal,* 57 F.3d at 349.

This Court agrees with the decisions of the *Lakemaker* and *Segal* Courts. Plaintiff cannot demonstrate that she is a lender within the meaning of § 523(a)(8)(A)(I). Plaintiff never loaned Defendant money, rather Plaintiff co-signed a loan with Defendant. The Court notes that nothing in this ruling disturbs the policies underlying § 523(a)(8), that is, to protect the integrity of the student loan system and to induce banks and non-profit organizations to advance funds for educational purposes. Plaintiff is a third party who signed a note. While it is undisputed that Plaintiff subsequently paid off the loans her status is now that of a general unsecured creditor, not a lender protected by 11 U.S.C. § 523(a)(8).

Plaintiff fails to cite any cases which support her argument that a third party who pays off a debtor's student loan debt has a non-dischargeable claim against the debtor. Rather Plaintiff attempts to argue that because Plaintiff paid off the Defendant's student loan debt, Plaintiff is equitably subrogated to the rights of the lender in seeking a finding

7

of non-dischargeability. The case alleged by Plaintiff to be most directly on point is *Aguiluz v. Bayni (In re Bayhi)*, 528 F.3d 393 (5th Cir. 2008). In *Bayhi*, debtor's ex-husband sought an order in state court compelling debtor to pay her portion of her student loan debt to lender Sallie Mae, as required by the terms of their judgment of divorce. The parties agreed that debtor's student loan debt was non-dischargeable under § 523(a)(8); the only question was whether the state court could enter an order compelling debtor to make payments to Sallie Mae. The Court of Appeals reversed the bankruptcy court and held that the state court order requiring debtor to pay Sallie Mae did not violate the discharge injunction of 11 U.S.C § 524.

The *Bayhi* case has no applicability to the facts of the instant case. First, this Court finds the reasoning in *Bayhi* to be difficult to follow, primarily because the Court's conclusion was based on an interpretation of Louisiana property law. The court essentially ruled that Louisiana property law and the judgment of divorce compelled a right of contribution by the debtor. The case does not address the issue of whether debtor's debt was non-dischargeable to her ex-husband. The Court stated :

> As a Louisiana solidary co-obligor is legally subrogated to the rights of the creditor, he make seek contribution (if he is a co-principal) or reimbursement (if he is a surety) to the same extent as could the creditor from the otherwise discharged debtor who is not, however, discharged on that particular debt.
>
> Such rights continue to exist even when other debts that might have been owed directly by one solidary co-obligor to the other are discharged in bankruptcy. This is because the solidary co-obligor is not seeking payment of a discharged *debt* owed to him, but is instead seeking to enforce his correlative rights that flow as a matter of law from his continuing relationship with the otherwise discharged party as a co-obligor on a non-discharged and, more importantly,

8

> a *per se* non-dischargeable solidary obligation to a third
> party.

*In re Bayhi*, 528 F.3d at 407 (emphasis in original, footnote omitted).

This Court is not bound by the holding of the *Bayhi* case. However, even if this Court found some merit in the Court's ruling, the *Bayhi* case is limited to its facts. Plaintiff in the *Bayhi* case was not seeking a finding that debtor's student loan debt was non-dischargeable as to him. He was seeking a determination that debtor could be compelled to repay Sallie Mae (a governmental unit whose sole purpose is to fund student loans) based on Louisiana property law and terms of the judgment of divorce.

The other case relied upon by Plaintiff is equally unpersuasive. In *Hartford Casualty Insurance Co. v. Fields (In re Fields),* 926 F.2d 501 (5th Cir. 1991), the Hartford Casualty Insurance Company issued a surety bond to debtor. The surety agreement obligated debtor, as principal, and Hartford, as surety, to make payment to the state of Texas for all fees and taxes levied by the Texas Alcoholic Beverages Commission. Debtor filed for bankruptcy and, pursuant to the Surety Bond Agreement requirements, Hartford was required to pay Texas fees and taxes owed by the debtor to the state of Texas. Hartford subsequently filed a non-dischargeability action against debtor seeking a determination under 11 U.S.C. § 523(a)(1)(A) that the amount Hartford had paid in taxes and fees to the state of Texas pursuant to the Surety Agreement was a non-dischargeable claim against the debtor. The Court of Appeals ruled in favor of Hartford, stating that "Hartford, having paid debtor's taxes to the TABC, is subrogated to all the rights that the State of Texas had against debtor under the Bankruptcy Code." *In re Fields*, 926 F.2d at 504.

9

The *Fields* decision has no applicability to the facts of this case. In *Fields,* the relationship between the debtor and the party seeking a finding of non-dischargeability was a surety relationship. Hartford was neither a borrower nor a lender to debtor. Hartford had an explicit contractual relationship with debtor which provided that if debtor failed to pay taxes to the State of Texas, Hartford would pay those taxes and become subrogated to all the rights, remedies and equities of the original creditor. In other words, the Surety Agreement between Hartford and debtor Fields expressly provided for the right of subrogation in the event Hartford had to pay the tax obligation of debtor.

A second reason for distinguishing the *Fields* case is that the case addresses the non-dischargeability of a tax debt. The case does not speak to the policy considerations regarding non-dischargeability of a student loan debt under 11 U.S.C. §523(a)(8). As noted above, the protections of § 523(a)(8) are provided to a limited number of parties. Debtors may obtain a finding of non-dischargeability only if they can show that the payment will impose an undue hardship on debtor and debtor's dependents. Conversely, the only lenders entitled to a finding of non-dischargeability are a narrow class of parties who provide a educational benefit or loan insured or guaranteed by a governmental unit or made under a program funded in whole or in part by governmental unit or institution. *See In re Segal,* 57 F.3d 342; *In re Lakemaker, 241 B.R. 577; Community Memorial Hospital v. Gordon (In re Gordon)*, 231 B.R. 459, 465 (Bankr. D. Conn. 1999) (repayment of loans by hospitals to induce debtor to work for hospital does not give rise to a non-dischargeable obligation); compare *Student Aid Funds v. Flint (In re Flint)*, 238 B.R. 676 (Bankr. E.D. Mich. 1999) (United Student Aid Funds, holder of consolidated student loan notes was an educational lender for

10

purposes of 11 U.S. C. § 523(a)(8)).

Plaintiff in this case is not a lender nor did the loans Plaintiff signed with Defendant give Plaintiff a right of subrogation. This Court concludes, based on the Bankruptcy Code and the relevant case law, that, as a third party who paid off Defendant's student loan debt, Plaintiff is an unsecured creditor and not entitled to the protections afforded by 11 U.S. C. § 523(a)(8). The Court has found no authority to support the proposition that a co-borrower who pays an obligation it contractually owes under the terms of a student loan note is entitled to be subrogated to the rights of the party receiving payment. Case law does not support the proposition that under § 523(a)(8) such a co-borrower is entitled to have the payment held to be a non-dischargeable student loan.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment on Count II of the Complaint is denied. Summary Judgment on Count II of the Complaint is granted favor of Defendant. Count II of the Complaint is dismissed.

Signed on September 08, 2010

```
                              /s/ Marci B. McIvor
                              Marci B. McIvor
                              United States Bankruptcy Judge
```